194 So.2d 627 (1967)
STATE of Florida ex rel. James A. JOHNSON, Relator,
v.
Honorable Hugh MacMILLAN, As Duly Appointed Judge of the Criminal Court of Record of Hillsborough County, Respondent.
No. 7462.
District Court of Appeal of Florida. Second District.
January 30, 1967.
*628 Harry M. Hobbs, Tampa, for relator.
Paul Antinori, Jr., State Atty., John S. Burton, Asst. State Atty., Tampa, for respondent.
ALLEN, Chief Judge.
James A. Johnson, the relator, seeks to prohibit Judge Hugh MacMillan from trying him upon an indictment for embezzlement on the ground that Johnson is immune from prosecution by reason of his appearance before the Grand Jury and answering various questions asked him by the State Attorney and the State Attorney's investigator.
Judge MacMillan was assigned to the Criminal Court of Record of Hillsborough County due to disqualification of the two resident judges.
*629 Johnson was subpoenaed before the Hillsborough County Grand Jury and was immunized from prosecution for any of the things or matters about which he would testify concerning violations of the laws against larceny.
Thereafter, the State Attorney questioned Johnson in detail concerning the direction and activities of the employees working directly under Johnson's supervision, including Manuel Nales, Jr., Ray Gonzalez, Billy Hooker, James G. Clements and Jacquelyn Benjamin.
James A. Johnson was questioned concerning his employment and duties while working as supervisor of the book depository.
Johnson is being prosecuted for working in concert with and under the direction of J. Crockett Farnell, Superintendent of the Board of Public Instruction of Hillsborough County, Florida, to embezzle such properties as building supplies, paint, lumber, gasoline, tools and equipment and having the same delivered to premises known as Camp Oconee owned by a corporate entity of which the co-defendant Farnell is a principal stockholder. This charge proceeds under a special statute pertaining to public officials and public employees  Section 812.10, Fla. Stats. F.S.A.
As above mentioned, J. Crockett Farnell and James A. Johnson were jointly indicted. The State Attorney for the Thirteenth Circuit filed an amended information, Case No. 64244-A, which is as follows:
"Paul Antinori, Jr., State Attorney for the Thirteenth Judicial Circuit in and for the County of Hillsborough, State of Florida, does hereby CHARGE that J. CROCKETT FARNELL and JAMES A. JOHNSON, in the County and State aforesaid, did commit embezzlement in the following particulars:
"(1) That at all times herein the defendant, J. CROCKETT FARNELL, being a County Officer, to-wit: Superintendent of the Board of Public Instruction of Hillsborough County, Florida, and JAMES A. JOHNSON, at all times herein being an employee of the Board of Public Instruction of Hillsborough County, Florida, to-wit: Supervisor of warehouse in the County School System known as the `Book Depository':
"(2) That at all times herein the said defendants while acting in their aforesaid capacities and by virtue of their said offices and employment, on and from the 1st day of January, 1958, and on divers and sundry occasions from that date to the date of the filing of this Information, did convert to the use of the said J. CROCKETT FARNELL, property and effects belonging to the Board of Public Instruction of Hillsborough County, Florida, a more further description of which is hereinafter alleged, with the intent of defrauding and permanently depriving the school board of said property and effects, it being the duty of the said J. CROCKETT FARNELL and the said JAMES A. JOHNSON to receive said property and effects and to properly administer said property and effects for the use and benefit of the County School Board, and more particularly, on and between the times aforementioned, the said J. CROCKETT FARNELL being a private stockholder and owner of a private corporation known as James Investment Company, said corporation being the grantee and owner of certain improved property, acreage and premises in the County of Hillsborough, which property and premises is commonly known as `Camp Oconee', did procure, obtain, counsel and direct the said JAMES A. JOHNSON, to transport and deliver, or to have transported and delivered, by employees working subordinate to the said JAMES A. JOHNSON, building materials, lumber, paint and supplies of the type used in the construction and maintenance of buildings, hardware, janitorial supplies and equipment of various *630 sorts and kinds used for the construction, maintenance or beautification of buildings and yards, gasoline and plumbing fixtures, which property and effects were actually transported and delivered to the said `Camp Oconee' and used for the purpose of maintaining, repairing, improving and refurbishing the said `Camp Oconee', contrary to the form of the Statute in such case made and provided, to-wit: Florida Statutes 812.10 of the Laws of Florida, 1965, and against the peace and dignity of the State of Florida."
Attached to the brief of the relator is a copy of a motion for bill of particulars of the defendant J. Crockett Farnell and also a bill of particulars furnished by the State Attorney in response to the motion for bill of particulars.
For clarity, we shall first show what information was requested and in the succeeding paragraph show the answer furnished by the State.
Questions:
"2. Whether the State intends to charge and prove, at the trial of said cause, that defendant, J. Crockett Farnell, personally committed each of the alleged offenses charged in the Amended Information or whether said defendant procured, obtained, counseled and directed James A. Johnson to commit each of the alleged offenses, and if the latter, whether the defendant, J. Crockett Farnell, was present, procuring, obtaining, counseling and directing James A. Johnson to commit each of the alleged offenses, and, in either case, the exact time, date and place thereof.
"3. Whether the State intends to charge and prove, at the trial of said cause, that defendant, J. Crockett Farnell, personally committed some of the alleged offenses charged in the Amended Information, and procured, obtained, counseled and directed James A. Johnson to commit other of the alleged offenses, and, if so, which of the alleged offenses were personally committed by defendant, J. Crockett Farnell, and which of the alleged offenses the defendant, J. Crockett Farnell, procured, obtained, counseled and directed James A. Johnson to commit, and as to the latter, whether defendant, J. Crockett Farnell was present, and, in either case, the exact time, date and place thereof."
Answering 2 and 3, the State said:
"In answer to Paragraphs Two and Three of the Motion for Bill of Particulars, the State intends to prove that J. Crockett Farnell committed the offense of embezzlement as charged in the Amended Information, in that the said J. Crockett Farnell procured, obtained and directed James A. Johnson to do and to have done by others the acts set forth in the Amended Information. The State is unable to say at what precise or exact time, or date, or place the said J. Crockett Farnell directed James A. Johnson to do the things charged, other than to say that the offense was committed during the period from January 1, 1958, to July 12, 1966. The precise or exact time, date, or place of any such conspiracies, agreements, procurement, obtaining, or directing on the part of J. Crockett Farnell and/or James A. Johnson are peculiarly within the knowledge of said persons and are not and cannot be known to the State."
Question:
"8. The names and addresses of each of the employees working subordinate to James A. Johnson, and the time, date and place that the State intends to charge and prove, at the trial of said cause, each of said employees transported and delivered to and at Camp Oconee, property and effects belonging to the Board of Public Instruction of Hillsborough County, Florida, and the specific and precise item of property and effects each of said employees transported and delivered, and the name of the person or persons to *631 whom, and the place at said Camp Oconee where, said items of property and effects were delivered at each of said times, dates and places."
The State answered:
"In answer to Paragraph Eight of the Motion for Bill of Particulars, the names and addresses of each of the employees of the Board of Public Instruction who worked officially subordinate to James A. Johnson are as follow:
Reinaldo Gonzalez, Route 5, Box 257, Anderson Road, Tampa, Florida;
Gaston Clements, Route 2, Box 354, Plant City, Florida;
Julian Hooker, Route 2, Box 354, Plant City, Florida;
Billy Hooker, 4001 Watson, Tampa, Florida;
Benicio Martinez, 4306 Carmen Street, Tampa, Florida;
Jacqueline Benjamin, 4402 San Carlos, Tampa, Florida;
Manuel Nales, Jr., 6405 Hubert, Tampa, Florida."
Question:
"10. A statement specifying and designating exactly how and in what manner the alleged offenses embraced in the Amended Information were connected with the discharge of the duties of the office of defendant, J. Crockett Farnell, as Superintendent of Public Instruction of Hillsborough County, Florida, as required and provided by Section 932.06, Florida Statutes, if the State intends to rely on Section 932.06, supra, to avoid the applicable two-year statute of limitations provided in Section 932.05, Florida Statutes."
The State answered:
"In answer to Paragraph Ten of the Motion for Bill of Particulars, the State alleges that by virtue of the fact that the defendant, J. Crockett Farnell, was at all times the Superintendent of the Hillsborough County School Board, he had the power and authority to direct and control the personnel within the school system, including James A. Johnson, and that in fact he did direct and control the said James A. Johnson to illegal purposes as set forth in the charge in this case; that, by virtue of the fact the defendant, J. Crockett Farnell, was at all times the Superintendent of the Hillsborough County School System, he had the power, authority and control with respect to the merchandise belonging to the school system, including the warehousing and ultimate use of the same; that he had control over the Purchasing Department of the school system and the Business and Finance Office of the school system; that he was the executive officer of the Hillsborough County School Board and responsible for executing the policies of the Board; that he was at all times the Chief Administrator of the school system and by reason of his special position and authority he was able to perpetrate the crime and deeds set forth in the charge in this case."
It should be mentioned in passing that while this was a motion for bill of particulars on behalf of J. Crockett Farnell, that the relator Johnson was also jointly indicted and that the testimony given by Johnson before the Grand Jury, at which time he was told by the State Attorney that he was granted full immunity, showed his relations to Superintendent Farnell.
The State Attorney's questioning of James A. Johnson was as follows:
"Q. * * * Mr. Johnson, that Statute and Sections of the Florida Statutes which I have just read to you are known as the Immunity Statutes. It means you, in effect, that if you are here under compulsory process such as a subpoena and assuming that this Grand Jury is investigating violation *632 of the laws against larceny and you are called upon to testify that, in view of this immunity given to you from prosecution, and you are granted immunity from prosecution for any of the things or matters about which you testify concerning violations of the laws against larceny, that in view of that you must answer the questions and you are not, however, immunized from prosecution in the event you falsely testify. May I ask you, do you understand that?
"A. Well, I think you got a little bit too fast there for me. In other words, I am immune from prosecution.
"Q. Except for perjury.
"A. Except perjury. What is perjury? (The perjury statute was read to the witness.)
"Q. * * * I want to explain to you that this Grand Jury is presently investigating the lunchroom commodity program of the Hillsborough County School Board for all times previous to the present time; that the Grand Jury is investigating certain alleged misappropriations, pilfering and larcenies of certain commodities involved in the school lunch program. Therefore among other things this Grand Jury is investigating violations of the laws against larceny in the State of Florida.

"The Grand Jury is also investigating general malpractice and mismanagement within the County School System of the school lunch program.
"You are here pursuant to subpoena to answer questions in connection with that investigation. Do you understand that? That is what we are investigating.
"A. Yes, sir." (Emphasis added.)
Mr. Johnson was asked if he was in charge of the commodity warehouse in the school system and had been until recently. He replied that he had, and then stated that he had been transferred to the warehouse. Mr. Johnson stated he was hired by Mr. Farnell the Superintendent; that he played football under Farnell at Hillsborough High School; and that he had certain truck drivers working under him at the commodity warehouse. He testified their names were Manuel Nales, Jr., Ray Gonzalez, Gaston Clements, and Billy Hooker, and he had a secretary also.
Johnson stated: that the maintenance department delivered to the schools and all he did was send them out and checked the cases in; that he dispatched the truck drivers, made the allocations of the commodities to the schools; established the commodity run sheets and how many units were going to various schools; that his secretary supervised the commodity run sheets when they came in from the drivers; that all commodities were stored at the warehouse but as they got overloaded they were stored at other places; and that a Cardex system at the warehouse reflected the perpetual inventory.
After Mr. Johnson testified that he had been advised a man was coming over to take an inventory, he was asked this question:
"Q. Mr. Johnson, at the time you first became aware someone was coming over there, were you aware of shortages and overages in your inventory there at that time?"
Johnson was questioned on whether he ordered Billy Hooker to load a truck full of turkeys and then drive around the block so that the inventory taken by Mr. Childers would be incorrect. The questioning proceeded:
"A. I don't know whether I had him drive around, you say around the streets. I sent him on a run. I told him to put these, if I am not mistaken *633  of course, I am trying to think back a year ago.
"Q. You couldn't possibly forget this incident.
"A. Yes, but I put some turkeys on the truck and I told him to keep them on there until he came back in, so when he took the inventory he would not include the turkeys in the thing, but in the meantime he included all the stuff that we had brought in from the schools anyway, so it was a fouled up situation when he finally got the inventory out.
"* * *
"Q. Mr. Johnson, did you have building supplies picked up from Mr. Christian's warehouse and taken to your mother's house to fix up your mother's house?
"A. No, sir.
"Q. Never?
"A. I never have.
"Q. You deny then that Billy Hooker, your driver, ever took any building supplies over to your mother's house from Mr. Christian's warehouse?
"A. If he took anything to my mother's house, it wasn't from the warehouse.
"Q. Or Mr. Julian Hooker, his brother. Has Mr. Julian Hooker ever taken any building supplies from Mr. Christian's warehouse to your mother's house?
"A. Not from the warehouse. He might have taken some building supplies there. I don't know whether it was Billy or Julian, but one of them way back there had went with me on the way home and picked the stuff up from Henry West and Sons and carried it to my mother's but it wasn't anything from the warehouse. This was four or five years ago."
It was clear from the amended information filed against Mr. Farnell and Mr. Johnson, and under which Mr. Farnell has already been convicted, and from the bill of particulars filed by the State Attorney, that the prosecution will attempt to prove that Farnell and Johnson worked in concert. The testimony before the State Attorney and the Grand Jury showed that Johnson worked under Farnell and that he, in turn, had charge of various supplies of the school system, which were distributed through various employees over which Johnson had control, and that through these employees various school board items were delivered to Camp Oconee.
In the case of State ex rel. Mitchell v. Kelly, Fla.1954, 71 So.2d 887, Mr. Justice Drew wrote the opinion for the Supreme Court and discussed in detail the effect of a witness' immunity from prosecution while testifying in any investigation proceeding or trial for a violation of any of the statutes of Florida against bribery, burglary, larceny, gaming or gambling or any of the statutes against the illegal sale of spirituous, vinous or malt liquors, embraced in Section 932.29, Florida Statutes, F.S.A.
The Court states (p. 894):
"The subject matter of the pertinent `investigation, proceeding or trial' must be one or more of the five categories of crimes specifically enumerated in the statute, that is, `* * * any of the statutes of this state against bribery, burglary, larceny, gaming or gambling, or of any of the statutes against the illegal sale of spirituous, vinous or malt liquors, * * *.' Otherwise, the statute is not involved. However, once the statute becomes applicable, the immunity effected is not confined to immunity for the crimes specifically enumerated therein. Instead, the immunity of the witness extends, *634 by the terms of the statute, to `* * * any transaction, matter or thing concerning which he may so testify or produce evidence, * * *.' (Emphasis added.)
"We interpret the words `transaction, matter or thing' to refer to offenses revealed by the testimony so given and not merely to the five offenses enumerated. The testimony so given need but be relevant to and have substantial connection with the subject of inquiry to bestow complete immunity for any offense revealed. Any narrower construction would raise serious question of the constitutionality of the statute. [Cases cited].
"* * *
"The privilege afforded by the constitutional guarantee against self-incrimination extends not only to answers that would themselves support a conviction but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the witness for a crime. * * *
"* * *
"We therefore hold that where a witness is required to testify in an investigation, proceeding or trial, the subject matter of which involves any of the five categories of crimes specifically enumerated in Section 932.29, Florida Statutes 1951, F.S.A., this statute is applicable. When the witness gives testimony responsive to questions which are relevant to such subject matter, the witness is free forever from being subjected to a penalty, forfeiture or prosecution for any offense substantially connected with the transaction, matter or thing concerning which he testified if any testimony so given in such inquiry constitutes a link in the chain of evidence needed to prosecute such witness thereafter charged for such offense revealed by testimony he was required to give, whether such testimony is used or not." (Emphasis added.)
In the case of State ex rel. Marshall v. Petteway, 1935, 121 Fla. 822, 164 So. 872, which was an original prohibition proceeding by the State, on the relation of John Marshall, against W. Raleigh Petteway, as judge of the Criminal Court of Record of Hillsborough County, John Marshall had been informed against for falsifying public records by corruptly placing illegal names on registration books of Election District No. 3 of Tampa, Florida.
To that information, the petitioner filed pleas in bar alleging in substance that the county solicitor of Hillsborough County conducted an investigation into the legality of the registration of electors for the municipal primary election to be held in Tampa, September 3, 1935, and that during the investigation the petitioner was compelled to attend and testify before the county solicitor concerning charges embraced in the information filed against him and that in fact he was immune against such charges.
The Court, in its opinion, said:
"Under the immunity granted by the Fifth Amendment to the Federal Constitution, it is necessary for one charged with crime to claim such immunity before testifying, otherwise he is barred from claiming the benefit of it, Heike v. United States, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450, but this is not the case under our statute. It compels the one charged to attend and testify `upon any trial, hearing, proceeding or lawful investigation or judicial proceeding, in the same manner as any other person' and then offers the immunity as a reward for so doing. The words of the statute are mandatory. It would be idle to contend that the person charged waived his immunity when he appeared and testified when he had no alternative but to comply with the subpoena. [See cases cited.]
"* * *

*635 "The rule is settled in this state that prohibition may be employed to restrain an excess of jurisdiction as well as to prohibit the exercise of judicial power where none exists. It may also be used to confine a court within his power when he attempts to exercise jurisdiction beyond the legitimate scope of his powers. * * *
"Having been required to testify concerning the matter for which he stands charged, petitioner was under the statute relieved from prosecution or punishment therefor in this proceeding. * * *"
In State ex rel. Reynolds v. Newell, Fla. 1958, 102 So.2d 613, in an opinion by the then Chief Justice Terrell, it was stated:
"Any incriminating fact or circumstance that will contribute weight to other facts or circumstances from which guilt may be inferred is sufficient to constitute a link in the chain of evidence warranting prosecution. Many links may be required to compose the chain but the one charged cannot be compelled to furnish any of them if they directly or indirectly incriminate him. * * *
"* * *
"The purpose of the immunity statute is to aid the prosecution in securing evidence despite the protection afforded defendant against self-incrimination by Section 12, Bill of Rights, Florida Constitution, F.S.A., and should be liberally construed to accomplish that purpose. State ex rel. Byer v. Willard, Fla. 1951, 54 So.2d 179; Florida State Board of Architecture v. Seymour, Fla. 1952, 62 So.2d 1. The terms of the statute and its application must be as broad as the constitutional guaranty, otherwise the ends to be accomplished would be completely frustrated because no one would testify upon any investigation, proceeding or trial for violation of the statutes against the five crimes enumerated. * * *" (Emphasis added.)
The amended information, in which J. Crockett Farnell and James A. Johnson were jointly charged while acting in their capacities as county officers, stated to-wit: The Superintendent of the Board of Public Instruction of Hillsborough County and Johnson, as Supervisor of the warehouse in the county school system, during a period of time from the 1st day of January, 1958, to the date of the filing of the Amended Information, did convert to the use of the said J. Crockett Farnell property and effects belonging to the Board of Public Instruction of Hillsborough County; it being the duty of the two parties to receive said property and effects and to properly administer the property for the use and benefit of the school board, etc.; and that J. Crockett Farnell did procure, obtain, counsel and direct James A. Johnson to deliver or to have transported or delivered by employees working subordinately to the said James A. Johnson various supplies to Camp Oconee, which is owned by a corporation in which J. Crockett Farnell is a private stockholder.
We have examined the testimony given by Mr. Johnson to the Grand Jury, State Attorney and to the investigator for the State Attorney and cannot escape the fact that the bill of particulars furnished shows that the prosecution intended to prove that J. Crockett Farnell and James A. Johnson worked in concert in this venture, and that by being required to testify before the Grand Jury, State Attorney and State Attorney's investigator, that James A. Johnson was immunized from any prosecution by reason of the Florida laws.
For this reason, the writ of prohibition should issue with directions that the accused be discharged from prosecution under the amended information in this case.
It is so ordered.
SHANNON and HOBSON, JJ., concur.