CARROLL, Judge.
This appeal by the City of Miami, the defendant below, is from an adverse judgment based on a jury verdict, in an action for damages filed against the City of Miami by the administratrix of the estate of Ejester Cleveland, deceased, under the survival act, § 46.021 Fla.Stat., F.S.A., and by Cleveland’s widow, under the wrongful death act, §§ 768.01 and 768.02 Fla.Stat., F.S.A., alleging the death of Ejester Cleveland was proximately caused by negligent discharge of firearms by the city’s employees (police) while patrolling an area of the city in the vicinity of the residence of the deceased.
By answer the defendant city denied negligence and denied the incident occurred while the police were patrolling, and averred the police were attempting to control a riot which was in process or was developing. As affirmative defenses the city pleaded the deceased had been guilty of contributory negligence and assumption of risk, and that the killing was justified in law in that the officers were suppressing or dispersing a riotous assembly or seeking to arrest persons comprising the same.
Among the facts disclosed in evidence at trial were the following. The shooting in which the plaintiffs’ decedent was killed occurred in the late evening on August 8, 1968, when city policy were seeking to disperse a riotous or tumultuous gathering of persons in the street and on the sidewalk in front of the apartment building located at 329 Northwest 22nd Street in the City of Miami. This was one of a number of disturbances, in that and another section of the city, to which police were required to respond on that date, which other disturbances were described generally as involving fire bombings, rock throwing, looting and reported shooting incidents. As to the number of police present on this occa *300 sion, there was evidence that upward of twenty police vehicles had converged on the scene. A command to disperse was not complied with, and arrest of the offenders was commenced. Those efforts of the police were met with epithets and the hurling of rocks and bottles, some objects being hurled from the building, and with certain gunfire directed against the police by a person or persons from the building. The evidence relating to the latter fact was in conflict. Plaintiffs’ witnesses denied that gunshots were fired from the building, claiming the sound heard by the police and believed to be gunfire was the noise of the breaking of bottles thrown from the building. Policemen testified to seeing a gun flash and hearing shots fired from the building, and that one of the police cars was struck by bullets and that one of the policemen was wounded by a gunshot. The plaintiffs’ decedent, who was standing on a balcony of an upper floor of the building overlooking the melee, received a fatal gunshot wound. There was testimony that a shot was fired from the area of the building where the deceased was located, as well as from other areas of the building. In response to gunfire directed against them from the building, or what the police recognized and assumed to be gunfire directed against them, the police retaliated by firing a volley of shots. It was during that time that the deceased was struck. While it is reasonable to assume from the circumstances that the shot which struck the deceased was one fired by the police, the actual source of the shot which resulted in his death was not established.
At the close of the plaintiffs’ case the defendant city moved for a directed verdict on the ground that it was shown as a matter of law that the decedent was guilty of contributory negligence and assumption of risk. The motion was denied. At the close of all the evidence the defendant city again moved for directed verdict on those grounds, and, on the basis of the facts then more fully developed, upon the additional ground that the city could not be held liable for the shooting by the police because the action of the latter in the circumstances presented was guiltless and fully justified in law. That motion was denied.
At a conference on jury charges, the trial judge ruled that he was directing a verdict against the defendant on the issues of contributory negligence and assumption of risk, thereby eliminating those defenses, and announced that the case would go to the jury on the issue of whether the action of the police in the circumstances was negligent.
The defendant requested, and the court refused, a charge with reference to the defense of justification, as follows:
“If any number of persons, whether armed or not, are unlawfully, riotously or tumultuously assembled in any county, city or municipality, any police officer of the said city or municipality shall go among the persons so assembled or as near to them as may be with safety and shall in the name of the state command all of the persons so assembled immediately and peaceably to disperse.
“If, by the reason of the efforts made by any of the said officers or by their direction to disperse such assembly, or to seize and secure the persons composing the same, who have refused to disperse, any such person or other person present is killed or wounded, the said officers and all persons acting by their order or under their direction shall be held guiltless and fully justified in law.”
The case was submitted to the jury, and a verdict was rendered in favor of the plaintiffs. Motion of the defendant for new trial was denied. Judgment was entered on the verdict, and defendant appealed. Among the errors assigned by appellant were the rulings of the trial court denying defendant’s motion for directed verdict at the close of the case, the submission of the cause to the jury without a charge on assumption of risk and refusal to give the above quoted requested charge relating to justification. Arguments based *301 on such assignments were presented in the brief of the appellant.
The preliminary question presented in this case is whether the provision of § 870.05 Fla.Stat., F.S.A., that such officers shall be held guiltless and fully justified in law for a killing or wounding in dispersing or quelling an unlawful or riotous assembly, applies to criminal and civil guilt or liability, or applies only to relieve from criminal prosecution and supplies the officers with no immunity or justification in law against civil liability.
Chapter 870 Fla.Stat., F.S.A., entitled “Affrays; Riots; Routs; Unlawful Assemblies,” provides the penalties for persons guilty of affrays and riots (§ 870.01 (1) and (2); defines unlawful assemblies and provides the penalty therefor (§ 870.02); and provides a greater penalty for persons participating in riots involving destruction of buildings or vessels (§ 870.03).
By subsection (4) of section 870 it is provided that where persons are unlawfully, riotously or tumultuously assembled in any county or municipality the officers thereof shall proceed there and command dispersal, and the statute provides that where the command is not complied with by peaceful dispersal, the officers are then under the duty to take into custody the persons involved.[1]
Section 870.05 provides that if a member of such an assembly or other person present is killed or wounded by reason of the efforts of the officers or persons acting under their direction to disperse such assembly, or to take the members thereof into custody in event of their refusal to disperse, such officers or persons acting under their direction “shall be held guiltless and fully justified in law.” [2]
In denying the defendant’s motion for directed verdict at the close of the case *302 and refusing defendant’s requested charge based on the statutory immunity, the trial court necessarily, and by express statement, construed the statute in question to be inapplicable in a civil action. We are impelled to disagree with that conclusion arrived at by the able trial judge.
The construction of the statute for which the appellees contend, and which the trial court placed thereon, that the legal justification provided therein was not applicable to civil liability, is contrary to the clear wording of § 870.05, and operates to give the statute the effect of providing only partial justification, rather than the full justification in law which it expressly states is conferred.
There is no ambiguity in the language of the statute granting legal justification and freedom from guilt to the officers in the circumstances specified there. We can observe no basis therein to conclude the justification conferred excludes actions predicated on civil liability. The word “guiltless” applies to guilt of a tort as well as to guilt of a criminal offense. Black’s Law Dictionary defines “guilty” as follows: “Having committed a crime or tort.” Although the general form of verdict for a defendant which is recommended in the Florida Rules of Civil Procedure, 31 F.S. A., Form 1, 986(b), is: “We, the jury, find for defendant,” for many years the form of verdict for a defendant customarily used in negligence or tort cases is one whereby the jury finds the defendant “not guilty” [of the tort]. The further wording in § 870.05, that for such action the officers shall be held “fully justified in law,” denotes the action to be righteous and without fault. How may conduct which by statute is declared tó be fully justified in law constitute an actionable wrong? Black’s Law Dictionary does not separately define the word “justified.” The definition of “justified” in the Oxford English Dictionary is: “Made just or right; made or accounted righteous; warranted; supported by evidence.”
The grant of legal justification by § 870.05 must be read in connection with the duties imposed on the officers by § 870.04. Where it is declared by law that for certain action a person “shall be held guiltless and fully justified in law,” such action cannot be the basis of criminal or civil action. That appears obvious because a civil tort claim, no less than a criminal prosecution, must be based on a wrongful[3] act. Therefore, in riot control situations where the killing or wounding of a person involved or present occurs, under the provision of § 870.05 if the officers involved would not be subject to criminal prosecution therefor, they would not be subject to civil liability for such action.
The presence in the riot control statute of the declaration of legal justification imports legislative awareness that performance by the officers of the duties imposed on them in the statute could, and on occasions might result in the killing or wounding of a person or persons involved or present, such as the unfortunate occurrence of that kind in this instance. The merits of the statute can be viewed in different lights. On the one hand it can be argued that granting legal justification in the event of a killing or wounding in dealing with an unlawful assembly as required is a callous and uncivilized measure, and that it operates unjustly to relieve from liability officers who might needlessly kill or wound persons in those situations. On the other hand, it can be argued the legislation is based upon an assumption the officers *303 will properly perform their duties and will not go about the performance thereof in an improper manner, and that a possibility that the officers might act improperly, causing harm unnecessarily, is outweighed by the need to protect them from liability in order to assure effective official action by them adequate to quell riotous assemblies, in order to preserve the peace and protect the public, which might not be accomplished if the enforced actions of the officers were required to be taken at their peril and at risk of criminal and civil liability.
We have considered the question of whether, notwithstanding the statutory grant of full justification in law, the immunity from liability thereby supplied can be applied to the officers acting in situations covered by the statute, or be withheld and denied to them, depending upon a determination of whether the force or degree of force employed by them was or was not out of proportion to the urgency of the occasion or was or was not such that it was foreseeable that injurious consequences most likely would result therefrom. While such determinations may have a bearing or operate as a limitation on the (non-statutory) privilege or legal justification of an individual, for a killing or injury to others in resisting or thwarting a felonious act, as when facing armed robbery (see Yingst v. Pratt, 1966, 139 Ind.App. 695, 220 N.E.2d 276, 279), in our view the legal justification granted to the officers in dealing as required with riotous assemblies is not subject to be granted or withheld on the basis of a determination of those questions.
This is so because not only does the statute, which provides that for their actions the officers shall be held fully justified in law, fail to contain any such exceptions or limitations, but its broad language denotes the absence thereof. If it were held otherwise, the officers in that situation would be faced with the dilemma of resisting and quelling such action at their peril, or of having to withdraw from the scene contrary to their prescribed duty, in order to protect themselves from injury or death. The statute sufficiently shows legislative intent that the officers should not be so disadvantaged. Statutory grants of immunity are to be liberally construed, and where legal justification or immunity is granted by organic law or statute the protection thus afforded must be as broad as that which is given in the enactment, otherwise the ends sought to be accomplished thereby are frustrated. State ex rel. Reynolds v. Newell, Fla.1958, 102 So.2d 613; State ex rel. Johnson v. MacMillan, Fla.App.1967, 194 So.2d 627; State v. Buchanan, Fla.App.1968, 207 So.2d 711; State v. Chapman, Fla.App.1970, 240 So.2d 491.
It follows, in our opinion, that the legislative grant of legal justification to the officers by § 870.05 may not be made to depend upon a subsequent determination of whether they used gunfire or other force unnecessarily, or more than was necessary, or in a negligent manner, in the performance of such required duties.
The courts should not be, and are not concerned with the wisdom of the legislation. If the statute is to be changed, or exceptions made thereto, those are matters to be accomplished by the legislature. That body has not seen fit to change or modify the provision in question of this statute since its initial enactment in 1868.
Chapter 870 has been amended by the legislature in recent years, in certain respects not changing or affecting § 870.05. In 1967 § 870.01 was amended to increase the penalty for persons guilty of a riot or of inciting a riot. Also, in that year § 870.04 was amended to add, to the officers named therein who were there directed to disperse unlawful assemblies, officers of the Game and Fresh Water Fish Commission, beverage enforcement agents, personnel of the Department of Law Enforcement, “or any other peace officer.” In 1969 the legislature added a number of sec *304 tions to the chapter, designed to prevent riots and to strengthen control of unlawful or riotous assemblies, which included the declaring of a state of emergency in certain situations. It is of material significance that in so amending and supplementing Chapter 870 the legislature increased the officers required to enforce the provisions of § 870.04 but left intact the legal justification section, 870.05.
We have dealt at length with the scope and effect of §§ 870.04 and 870.05 because the precise questions involved here in connection with the statute do not appear to have been considered and determined previously by Florida appellate courts, and because we regard the questions to be of great public interest. For the latter reason we have elected to so certify our decision thereon to the Supreme Court of Florida, as a means of conferring jurisdiction upon the Supreme Court for its review upon petition for certiorari, as authorized and provided for in Art. V, Section 4(2) of the Constitution of Florida, F.S.A.
The appellant presented, alternatively, the contention that where the trial court had ruled that the legal justification for the action of the officers provided for in § 870.05 was not applicable in the civil action, and that the case should go to the jury on the issue of negligence, the trial court committed error by withdrawing from the jury’s consideration the issue as to assumption of risk by the deceased. We find merit in that contention.
As a negligence action, liability was sought to be imposed on the City of Miami on the basis of respondeat superior (Har-grove v. Town of Cocoa Beach, Fla.1957, 96 So.2d 130), if the police were found to have been guilty of negligence proximately causing the injury. Viewing this case as one on negligence, as it would be if the statutory immunity was not effective, the evidence presented at trial was sufficient upon which to present the issue of assumption of risk for jury determination. Included therein was evidence that when the discharge of firearms commenced the decedent’s wife and children were with him on the balcony; that the deceased told his wife “you better move these kids”; that she first moved them from the front of the balcony, and then with them sought safety from the affray by entering the nearby apartment of a friend; but the deceased remained on the balcony while the discharge of firearms continued, and, as aforesaid, he then received a fatal gunshot wound. On that evidence a trier of the facts reasonably could conclude and find that the deceased had knowledge and appreciation of the danger and voluntarily exposed himself thereto, and thereby had assumed the risk of the injury suffered. See 23 Fla.Jur., Negligence § 70.
Therefore, if the statutorily provided justification for the action of the officers should not be applicable in this case, it would be our holding that the judgment should be reversed and the cause remanded for a new trial, because of the error of the trial court in withdrawing from the jury’s consideration the defense of assumption of risk.
However, for the reasons set forth herein, we hold the trial court committed error in denying the motion of the defendant City of Miami for directed verdict at the close of the presentation of the evidence in the case, and we reverse the judgment and remand the cause to the circuit court with direction to grant the defendant’s motion for directed verdict and enter judgment for the defendant.
Reversed and remanded with direction.

. “870.04 Magistrate to disperse riotous assembly. — If any number of persons, whether armed or not, are unlawfully, riotously or tumultuously assembled in any county, city or municipality, the sheriff or his deputies, or any constable or justice of the peace of the county, or the mayor, or any commissioner, councilman, alderman or police officer of the said city or municipality, or any officer or member of the Florida Highway Patrol, or any officer or agent of the Game and Fresh Water Fish Commission, Department of Natural Resources, or beverage enforcement agent, any personnel or representatives of the Department of Law Enforcement or its successor, or any other peace officer, shall go among the persons so assembled, or as near to them as may be with safety, and shall in the name of the state command all the persons so assembled immediately and peaceably to disperse ; and if such persons do not thereupon immediately and peaceably disperse, said officers shall command the assistance of all such persons in seizing, arresting and securing such persons in custody; and if any person present being so commanded to aid and assist in seizing and securing such rioter or persons so unlawfully assembled, or in suppressing such riot or unlawful assembly, refuses or neglects to obey such command, or, when required by such officers to depart from the place, refuses and neglects to do so, he shall be deemed one of the rioters or persons unlawfully assembled, and may be prosecuted and punished accordingly.”

. “870.05 When hilling excused. — If, by reason of the efforts made by any of said officers or by their direction to disperse such assembly, or to seize and secure the persons composing the same, who have refused to disperse, any such person or other person present is killed or wounded, the said officers and all persons acting by their order or under their direction, shall be held guiltless and fully justified in law; and if any of said officers or any person acting under or by their direction is killed or wounded, all persons so assembled and all other persons present who when commanded refused to aid and assist said officer shall be held answerable therefor.”
Since the liability claimed against the defendant City of Miami in this case is vicarious, based on respondeat superior (Hargrove v. Town of Cocoa Beach, Fla.1957, 96 So.2d 130; City of Miami v. Simpson, Fla.1965, 172 So.2d 435), the employer-city would not be liable if for the complained of actions of its employee officers the latter are held to be guiltless and justified in law. Williams v. Hines, 80 Fla. 690, 86 So. 695.

. Tlie principle that a justifiable homicide will not support a civil action for wrongful death brought on the basis that the killing was a tortious or wrongful act, has been recognized in suits between individuals. Thus in Wirt v. Fraser, 158 Fla. 777, 30 So.2d 174, where the plaintiff recovered because the facts failed to support the defense that the killing was in self-defense and thereby justified in law, it was sufficiently disclosed that had the defendant’s contention of self-defense been proved to the satisfaction of the jury, thereby establishing legal justification for the killing, there would have been no wrongful act and no recovery.